Evans, J.
dissenting. I concur with the majority of the' court, that a decree of the Ordinary, or the Court of Equity, on the accounts of an administrator, is only prima facie evidence in an action against the surety of the administrator.The notion that it is conclusive has some support from the words of the bond; but since the case of the Ordinary vs. Condy, the law has been generally considered otherwise. Some difficulty may arise from permitting the ac *529 counts to be opened and re-examined, .but the same difficulty presents itself on the plea of plene administravit ; and the difficulty will be very much diminished if the defendant be required, as I have no doubt he ought to be, to set out in pleading what he proposes by evidence to add or subtract from the accounts, as settled by the decree.
But on the 2d ground, I disagree with the majority of the court. The Act of 1789 provides, that if the sureties of an administrator shall conceive themselves in danger of being injured, 'they may petition the court to whom they stand bound, for relief; which court shall summon the administrator to appear, and thereupon shall make such order and decree as shall be sufficient to give relief to the petitioner. This course was pursued in this case, and the Ordinary revoked the administration of Mrs. Rush, and discharged the sureties from all future liability. By the Act, the Ordinary is to judge of the measure and mode of relief; but he could not and did- not assume to discharge from any liability which existed at the time of the revocation. It seems to me that the question is solved by inquiring, whether the administratrix was liable for these ne-groes at that time. If she had been called on to account on the day of the revocation," could she have been charged with these negroes 1 They were there unchanged, and the administrator de bonis non could have taken immediate possession of them. Mrs. Rush, as administratrix, had no title whatever to them, and could have maintained no action for them; and to bring them into, the.account of the administration, because they were eloigned by her husband two years after, would be,, to make that 'a continuing liability which had already ceased to exist. The error, it seems to me, arises from not distinguishing between that part of the estate which remains in specie, and would survive to a succeeding administrator, or be delivered up to the distributees, and that part which has no personal identity, such as money, debts, &c. and for which the administrator can only account in money. In relation to the latter, all the cases— Trimmier vs. Trail, the Ordinary vs. Bigham & Hudson — concur in making the surety liable, notwithstanding the revocation, and the reason is very obvi *530 ous; all these things could be brought into the account at the time of the revocation. But in relation to the former, the surety is made liable, if brought into the account, for what occurred after his liability had ceased. By law, the administrator has the control of the negroes, and a qualified property in them ; but unless they are sold by order of a competent court, or to pay debts by a legal process, they remain to be delivered over to the distributees.
The condition of the bond prescribed by the Act of 1789, contains these words : “ and all the rest of the said goods, chattels and credits, which shall be found remaining upon the account of the said administration, the same being first allowed by the said court, shall deliver and pay unto such persons respectively as are entitled to the same by law.” These words aptly illustrate the view herein presented, that the administrator shall deliver over such goods and chattels as remain in specie, to those who are entitled by law, and pay in money for the remainder. The administratrix, as to the negroes, was a mere bailee, in whom the law vested the legal estate ; but when the administration was revoked, the bailment ceased, and of course the liability of the surety. The liability of an obligor can be only coexistent with the bond, and it would be a strange anomaly, to hold that the liability continued after the bond was cancelled as to the future, by the parties. Whether the decree of the Ordinary was prudent in discharging the surety until new administration was granted, is foreign to this issue ; it is sufficient for the surety that the Ordinary decreed as he did, which he had an undoubted right to do.
In those cases where a second administration or new sureties have been given,"the sureties to the first administration have been held not answerable for what occurred after they were discharged; and I do not perceive any sufficient reason for applying a different rule in a case like the present. It would be tantamount to saying, you are discharged from all future liability, and yet you are liable, unless your principal shall deliver up the negroes to the distributees when they come of age, ten years hence; which in effect is no discharge at all.
If new administration had been granted, and the ne- *531 groes had gone into the possession of the new administrator, there could have been no pretence to charge this defendant ; nor could there have been, if the property had remained with Mrs. Daley, and she had delivered it'.over to the distributees. This shews the liability which now charges the defendant, to be contingent, and that the contingency happened after the revocation, and after the discharge from future liability.
Dunkin, C. concurred.